In the Matter of the Application of the NEW YORK, LACKAWANNA AND WESTERN RAILWAY COMPANY.

(Argued April 27, 1886 ; decided June 1, 1886.)

THIS was an appeal from an order of General Term modifying, and affirming as modified, an order of Special Term removing commissioners appointed to appraise lands of Harriet Bennett.

The proceeding was instituted in pursuance of a written contract between the petitioner, the railway company, and the appellants, bearing date the 24th day of May, 1883. By that contract the railway company agreed to purchase of the appellant, Harriet A. Bennett, the property known as the Union elevator at Buffalo, and with due diligence to take proceedings under the general railroad law, for the purpose of ascertaining the value of the premises and of the erections thereon, and the compensation to be paid therefor, and of obtaining the title in fee thereto. It was stipulated in the contract that Nelson K. Hopkins, Robert Dunbar and Brigham Clark should be appointed commissioners in said proceedings, to ascertain the compensation which ought justly to be made by the company to the party or parties owning or interested in said property, and that the decision of the majority of them should be binding on both parties. It was further mutually agreed that the said commissioners should be governed, in estimating said valuation and compensation, by the rules of law applicable to proceedings under said statutes (" excepting as they might be modified by this agreement "), and that all rights of appeal given by law should be reserved to either party. It was expressly agreed that in said proceeding no damage should be allowed because of injury to the Bennett elevator property, or any adjoining or adjacent premises, or any compensation allowed for any thing except the actual value of the premises and property described in the agreement. That, in ascertaining the compensation to be allowed, the commissioners should " take into consideration the capability of the premises and property for any use whatever," and that they should determine such compensation without delay, and upon their own knowledge and information, as well as upon such evidence as might be produced before them.

The contract then went on to provide that the value finally arrived at in said proceeding should " be the fixed purchase-price" to be paid by the railway company. It prescribed the

time of payment and of delivery of possession, and also provided for the execution and delivery by the appellant, Harriet A. Bennett, to the company of a deed, with covenants of seizin and for quiet enjoyment, conveying a perfect title to the premises, except as to certain incumbrances, for which allowance was to be made out of the purchase-money. The contract contained further stipulations respecting mutual accommodations in the use of their docks by the Union elevator and Bennett elevator properties, and various other stipulations, not affecting the main question presented upon this appeal, but to which it may be necessary incidentally to refer.

The proceeding for the appraisement of the property agreed to be sold was instituted by the railway company as it had agreed, and in October, 1883, in that proceeding thus instituted, an order was made by the Supreme Court at Special Term, in the fourth department, appointing the three gentlemen, named in the contract, commissioners to appraise the property. They made a report in January, 1884, fixing the compensation to be paid at the sum of $469,375, which report was confirmed at Special Term, but on appeal by the company to the General Term, the order of confirmation was reversed, and the commissioners' report was set aside. On that appeal an effort was made by the railway company to have new commissioners appointed, but the Supreme Court refused that relief on the sole ground that it had not the power to grant it because the parties had by their contract agreed upon the commissioners.

From that decision the railway company appealed to this court and the decision was sustained. (98 N. Y. 447.) The case then went back for a rehearing before the same commissioners and while that rehearing was pending before them, the railway company made a motion to the court at Special Term to vacate the order appointing the commissioners on the ground of alleged misconduct on their part. The allegations of misconduct contained in the moving papers were of two classes, one of which was not sustained and was not in question here; the other was, in substance, that Commissioners Dunbar and Clark on the second hearing declined to be governed by the opinion of BRADLEY, J., who delivered the opinion of the General

Term on the appeal from the order confirming the report of the commissioners. This refusal was regarded by the court below as misconduct which justified it in vacating the appointment of commissioners, and thus necessarily terminating the proceeding. In this opinion the learned judge laid down the rule that the owners were entitled to be allowed the fair market value of the property, and that that was the basis on which the estimate should be made and allowed, by the witnesses and the commission.

On the second hearing before the commissioners evidence of David S. Bennett was received of a valuation based upon the probable earnings of a new elevator of a certain capacity if erected on the lot in question, based upon the past earnings of two elevators which were named, and upon projected connections with lines of transportation. After the examination of this witness had been concluded the counsel for the railway company moved to strike out his testimony so far as it assumed to give a value, in dollars, to the property in question. The grounds of the motion were specified, one of them being that the testimony on which the estimate was founded was inoperative and worthless under the decision of the General Term. The motion was denied, Commissioner Hopkins being in favor of striking it out, Commissioners Clark and Dunbar of retaining it, Commissioner Dunbar saying that he was inclined to receive the evidence and give it the weight which he thought proper.

The question was raised at other stages in the case, and finally the commissioners were requested by the counsel for the railway company to rule on three propositions, viz. :

" *First.* There cannot be taken into consideration in arriving at the value of the property the probabilities of a connection with the railroad of the petitioner as one element affecting that value.

" *Second.* That the opinion of the General Term in the proceeding is controlling upon the commissioners as to the principles which should govern them in making their award.

" *Third.* That the measure of the award is the fair market value of the property as it was at the date of the contract."

Commissioner Dunbar announced that he did not consider himself bound by the Supreme Court decision, but did con-

sider himself bound and sworn to ascertain and determine the compensation which ought justly to be made by the company to the party or parties owning or interested in the property, and that he considered himself bound to do justice between the parties, and as much justice to the railroad company as to Mr. Bennett, as far as he knew. Commissioner Clark concurred with Commissioner Dunbar. This decision, it clearly appeared, had reference to that part of the opinion which held that the basis of the appraisal was the market value of the property.

The court here say: "The question for determination is, whether the commissioners, in declining to hold, in advance of any appraisal, that they were concluded on the point referred to, were guilty of misconduct, which authorized the court below to vacate the order appointing them, and thus terminate the proceeding.

"In respect to these matters, the position of the commissioners was peculiar. They were not acting merely as officers of the court, owing their appointment solely to it, but they had been selected by the solemn contract of the parties, and that contract established the principles by which they should be governed in making the appraisement. After the decision of the General Term on the first appeal had been pronounced, the case had come before this court, and it had adjudged that the provisions of the contract, so far as they bound the parties, were binding upon the court in carrying the contract into effect. Even if it should be conceded that the court had it originally in its power to decline to lend its aid to the carrying out of the contract, by refusing to appoint commissioners, and thus disabling the company from taking the first step which was essential to give vitality to the contract, it does not follow that after the court had entertained the proceeding and set the machinery in motion by which rights had accrued to the parties, it could, of its own volition, or in its mere discretion, terminate those proceedings, or require them to be conducted in a different manner or on different principles from those which had been agreed upon. On the former appeal to this court it was held that, notwithstanding the right of appeal was reserved to the parties, and notwithstanding that the statute authorized the court in ordinary cases, on the first appeal, not only to set

aside the award of the commissioners, but to appoint new com-
missioners, yet that, in this case, it could not exercise the power
to change the commissioners, because that would be a violation
of one of the terms of the contract. The same principle ap-
plies in respect to the rules which should govern the commis-
sioners in making their appraisement. The contract provided,
in that respect, that they should be governed by the rules of
law applicable to proceedings under the statute, *except as they
might be modified by the contract.* One of these modifications
was that no damages should be allowed because of injury to
the adjacent premises. Could it be seriously argued that the
court could, at the instance of the property-owners, have re-
quired the commissioners to allow such damages, because the
statute authorizes their allowance, or that it would be misconduct
on their part, which would authorize their removal, to refuse to
make such allowance if the court had, at some previous stage
of the case, decided that it was proper? Assuming that the
learned counsel for the company is right in claiming that the
general rule in condemnation proceedings is as he asked the
commissioners to hold, ' that the measure of the award was
the fair market value of the property *as* it was at the *date of
the contract,*' and that this was a correct rendering of the
opinion of the General Term, we come back to the question,
whether the commissioners were bound so to decide in this
case, in the face of the express stipulation of the contract,
' that in ascertaining and determining the compensation to be
allowed, the said commissioners shall take into consideration the
capability of the premises and property for any use whatever,
and that they shall determine such compensation upon their
own knowledge and information as well as upon such evidence
as may be produced before them.' This language is much
more comprehensive than ' the market price ' or ' market
value ' of the premises at the date of the contract, and shows
that the real value was to be ascertained, predicated, not merely
upon the condition of the property as it was at the date of the
contract, or the uses to which it was devoted at that time, but
upon its capabilities for any use whatever, and would fairly
admit, as an element of value, evidence of the improvements of
which it was capable and of the revenues which might, with

reasonable certainty, be expected to be derived from the development of those capabilities. , The peculiar nature of the property might be such that it had no fixed market value, and the parties, therefore, agreed that the commissioners, who were persons of experience, acquainted with the means of rendering property of that description available, might take into consideration what it was capable of yielding with reasonable and judicious development and management. Of course, as just and reasonable men, it would not be expected that they would calculate as certainties profits which were speculative and contingent or variable, but the language of the contract certainly implies that they were not to be confined in their estimate to the sum which it could be proved the property would bring if exposed for sale in the public market, or to a valuation based upon sales of other property in the vicinity. They were selected and agreed upon by the parties as competent judges of the real value of property of the description which was the subject of inquiry, and it is not to be assumed that they would omit to make due allowance for contingencies and uncertainties, and to properly weigh the evidence in connection with their own knowledge and information, to which, by the terms of the contract, they were expressly authorized to resort; and we are of opinion that, under the peculiar circumstances of this case, it could not be held to be misconduct in them to refuse to commit themselves in advance to a rule of decision which would exclude from their consideration matters to which it was expressly agreed they might have reference in reaching a result.

" There is nothing in the case to show that, in declining to decide as required by the counsel for the company, they intended to be disrespectful to the court or arbitrarily to overrule the opinion referred to, or to be contumacious or perverse, but on the contrary, it would rather seem that they intended conscientiously to perform their duty conformably to the contract under which they were appointed.

" The contract was one which secured advantages to both parties, in return for rights which they surrendered. The railroad company evidently desired to acquire the property, and if it had been compelled to resort to proceedings *in invitum* it

would have been open to the owners to resist them, and to contest the questions whether the property was required for railroad purposes, and whether the railroad company could in any event acquire more than a right of user. These points the owners surrendered by covenanting to give a deed in fee conveying a perfect title with covenants of seizin and quiet enjoyment, which no law could have compelled them to do. They also abandoned their claim for damages to adjacent property, which the law would have allowed, and they also agreed to withdraw the suits which they were then prosecuting against the company in relation to Dark Basin alley, and to assign to the company all their rights in that alley; also to convey to the company all their rights in lands in and adjoining the Evans ship canal, which the company were at the time seeking to obtain by proceedings under the railroad law. Various other arrangements for the mutual convenience of both parties were provided for in the contract, and the whole was based upon the assurance of a just compensation being made for the Union elevator property by having it appraised by three gentlemen of experience, agreed upon by the parties, who were to value the property in the manner provided by the contract. To require those arbiters to adopt any different rule of valuation, after the contract had been partly performed, and when the company was in the enjoyment of some of the benefits which were to be granted to them on its performance, would be a subversion of the rights of the appellants under the contract, which is inadmissible."

The court also held that the motion made and granted before any award by the commissioners was premature, as it could not be known until an award was made what effect they would give to the evidence on the question of value, and there was nothing to show that they might not, in arriving at a decision, be guided by the opinion of the General Term, " that the mere apprehension that the award will be excessive is not sufficient to justify their being prevented from making any. (*Livingston* v. *Sage*, 95 N. Y. 289.)" Also that the penalty of a second report was no answer to the objection that the application was premature, as if the commissioners were guilty of misconduct in making it, a motion to set it aside could be made. Also

*held* that the order was appealable, as it affected a substantial right, *i. e.*, "it deprived the appellants of the fruits of their contract by rendering its enforcement impossible."

*Geo. F. Comstock* and *Morris Morey* for appellants.

*Sherman S. Rogers* for respondent.

RAPALLO, J., reads for reversal of orders of General and Special Terms, and for denial of application.

All concur, except RUGER, Ch. J., and EARL, J., dissenting. MILLER, J., absent.

Ordered accordingly.